## Kennedy v. Medical Service Association of Pennsylvania (No. 2)

*William D. Boswell, Compton, Handler, Berman & Boswell* and *S. Regen Ginsburg,* for plaintiffs.

*William H. Wood, George H. Hafer* and *Leiby & Metzger,* for Medical Service Association of Pennsylvania, W. Harry Archer, Lewis T. Buckman and C. L. Palmer, defendants.

*Samuel K. White* and *Pepper, Hamilton & Scheetz,* for Pennsylvania Medical Society, Edgar W. Meiser, William S. Limberger and Malcolm W. Miller, defendants.

SHELLEY, J., January 10, 1966.—This matter comes before us on defendants' preliminary objections to plaintiffs' complaint in equity, wherein two of the plaintiffs, Frank Kennedy, Jr., and Marie Urbany, are subscribers of the Medical Service Association of Pennsylvania (hereinafter referred to as "Blue Shield"), two of the plaintiffs, Martin L. Fleishman and Arnold W. Newman, are licensed and practicing podiatrists in the Commonwealth of Pennsylvania; and the other plaintiff, Pennsylvania Podiatry Association, is a nonprofit corporation representing approximately 60 percent of the licensed qualified podiatrists in Pennsylvania. Plaintiffs seek to have the Nonprofit Medical, Osteopathic and Dental Service Corporation Act of June 27, 1939, P. L. 1125, 15 PS §2851-1501, et seq. (hereinafter referred to as the "Blue Shield Regulatory Act") declared unconstitutional and void.[1] Plaintiffs contend that the act is unconstitutional and void for the following reasons:

[1] This is one of four related cases involving podiatry. The other three are: (A) Martin L. Fleishman v. Medical Service Association of Pennsylvania, no. 516, Commonwealth Docket, 1964, which is an action of mandamus to compel Medical Service Association of Pennsylvania (Blue Shield) to register podiatrists as participating

"(a) The said Act deprives plaintiffs of their property without due process of law in violation of Article I, Section 9 of the Constitution of the Commonwealth of Pennsylvania;

"(b) The said Act is a special law purporting to regulate trade, in violation of Article III, Section 7 of the Constitution of the Commonwealth of Pennsylvania;

"(c) The said Act abridges the privileges and immunities of Plaintiffs and deprives them of their property without due process of law and denies to them the equal protection of the law, in violation of the Fourteenth Amendment to the Constitution of the United States of America;

"(d) The said Act deprives the Plaintiffs of their liberty and freedom of contract and of their right to acquire, possess, protect, use and enjoy their property, in violation of Article I;

"(e) The said Act tends to lessen and eliminate the competitive practice of podiatrists in relation to those services they perform for the care of the human foot in common with doctors of medicine and of osteopathy".

Plaintiffs aver that defendants have individually and collectively combined and conspired, intentionally and maliciously, to interfere with legislation which would permit podiatrists to register as doctors under

doctors under the Blue Shield plan; (B) Frank Kennedy, Jr., v. Medical Service Association of Pennsylvania, no. 515, Commonwealth Docket, 1964, which is an action of quo warranto to forfeit Blue Shield charter and distribute its assets because of the alleged unconstitutionality of the Blue Shield Regulatory Act of 1939, P. L. 1125, as amended, reported at 39 D. & C. 2d 27; (C) Leon Sandler v. Audrey R. Kelly, Insurance Commissioner, and Dr. Charles L. Wilbar, Jr., Secretary of Health, no. 2672, Equity Docket, no. 517, Commonwealth Docket, 1964, which is an action in equity to enjoin enforcement of the Blue Shield Regulatory Act of June 27, 1939, P. L. 1125, as amended, because of its alleged unconstitutionality.

the Blue Shield plan. Plaintiffs accordingly ask us to restrain defendants from engaging in and continuing their unlawful and malicious conspiracy and ask for damages.

Defendant, the Medical Service Association of Pennsylvania, is a nonprofit corporation, of which W. Harry Archer, Lewis T. Buckman and C. L. Palmer are directors. Defendant, the Pennsylvania Medical Society, is a nonprofit corporation, of which Dr. Edgar W. Meiser, Dr. William A. Limberger and Dr. Malcolm W. Miller are members of the board of trustees of the corporation.

Defendants filed preliminary objections, among which are demurrers to the complaint.

Four of the reasons averred by plaintiffs in support of their contention that the Blue Shield Regulatory Act is unconstitutional and void are identical with those in the quo warranto proceeding entered in our court to No. 515, Commonwealth Docket, 1964. See 39 D. & C. 2d 27.

We held in the quo warranto proceeding that the Blue Shield Regulatory Act, supra, meets the constitutional requirements, and for the same reasons hold in this proceeding that the Blue Shield Regulatory Act is constitutional and that defendants' demurrers must be sustained.

Plaintiffs complain that defendants "individually and collectively combined and conspired, intentionally and maliciously to defeat such legislation,[2] to actively

---

[2] Legislation referred to is set forth in paragraph 9 of the complaint, which reads as follows:

"Legislation, at the request of the Pennsylvania Podiatry Association, on behalf of its members, was introduced on February 19, 1957 (1957 H. B. 449, 476); on March 26, 1957 (1957 S. B. 469, 470); on March 2, 1959 (1959 S. B. 336, 337); on May 14, 1961 (1961 H. B. 1524, 1525); and on April 30, 1963 (1963 S. B. 478) to correct the unconstitutional deficiencies in said Act".

interfere with passage of such legislation; and to do other acts or prevent the inclusion of podiatrists under Blue Shield coverage and have otherwise defamed the reputation of podiatrists". The type of activity complained of here is exactly that kind of activity which is most essential to the maintenance of a free society, namely, the right to petition the legislature. This is one of the rights guaranteed in article I, sec. 20, of the Constitution of the Commonwealth of Pennsylvania, which provides as follows:

"The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance".

The right to petition referred to in article I, sec. 20, cannot be infringed, even momentarily, by individuals, by the State itself, by the courts or minor tribunals, or by corporations and unincorporated associations which function only by the grace of the State: Spayd v. Ringing Rock Lodge, 270 Pa. 67 (1921).

The right to petition the government is also protected by virtue of the First Amendment to the United States Constitution, as applied to the States under the Fourteenth Amendment. The United States Supreme Court has recently issued a landmark opinion on the right to petition the legislature in the context of a Sherman Act conspiracy violation. The case, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U. S. 127 (1961), is, in our opinion, controlling in the instant case.

In the Noerr case, a group of trucking companies and their trade association sought injunctive relief against a group of railroads, a railroad association and a public relations firm, charging that defendants had conspired to restrain trade in and monopolize the long-distance freight business, in violation of the Sher-

man Act. Plaintiffs alleged that the railroads had engaged the public relations firm to conduct a publicity campaign against the truckers designed to foster the adoption and retention of laws and law enforcement practices destructive of the trucking business, to create an atmosphere of distaste for the truckers among the general public, and to impair the relationships existing between the truckers and their customers. After trial, the district court entered a judgment awarding damages to plaintiffs, and enjoined the practices complained of. The Supreme Court of the United States, in reversing the district court, held that no violation of the Sherman Act can be predicated on mere attempts to influence the passage or enforcement of laws.

Plaintiffs attempted to secure the passage of legislation from the Pennsylvania legislature in 1957, 1959 and 1963 to include themselves within the Blue Shield Regulatory Act. The attempts resulted in failures. The Pennsylvania Medical Society opposed this legislation and appealed to the legislature, just as the podiatrists appealed to the legislature. Apparently, the case that was presented by the podiatrists on these three occasions was not convincing to the legislature, and they declined to pass such legislation. The podiatrists now seek to vent their frustration by engaging in the present injunctive action. This struggle between opposing interest groups for the passage or defeat of proposed legislation is exactly the type of activity protected by the First and Fourteenth Amendments as interpreted by Noerr.

ORDER

And now, January 10, 1966, the demurrer of defendants is sustained at the cost of plaintiffs.